UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Jeffrey L. Bailey and Marlon E. Carter, | Case No. 19-cv-1024 (DWF/TNL) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION** |
| Metropolitan Council, First Transit, Inc., Tim Ogren, Patricia Vold, Don Johnson, Troy D. Gustafson, Teamsters Local 120, and Dean Vinge, | |
| Defendants. | |

---

Jeffrey L. Bailey, 1418 130th Avenue, New Richmond, WI 54017 and Marlon E. Carter 2600 21st Avenue North, Minneapolis, MN 55411 (pro se Plaintiffs);

Brian Hentosz, Littler Mendelson, 625 Liberty Avenue, Pittsburgh, PA 15222 and Holly M. Robbins, Littler Mendelson, 80 South Eighth Street, Suite 1300, Minneapolis, MN 55402 (for Defendants Metropolitan Council, First Transit, Inc., Johnson, Ogren, Vold, and Vinge); and

Katrina E. Joseph, Teamsters Local No. 120, 9422 Ulysses Street Northeast, Suite 120, Blaine, MN 55434 (for Defendants Gustafson and Teamsters Local 120).

---

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendants First Transit, Inc., the Metropolitan Council, Tim Ogren, Patricia Vold, and Dean Vinge's Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 114), Defendants' Teamsters Local 120 and Troy D. Gustafson's Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 122), and Plaintiffs' motions to deny the motions to dismiss. (ECF Nos. 129 and 136). These motions have been referred to the undersigned for a report and recommendation to the Honorable Donovan W. Frank, United States

1

District Judge for the District of Minnesota, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. (ECF No. 3). Based on all the files, records, and proceedings herein, and for the reasons set forth below, the Court recommends that the motions to dismiss be granted and the motions to deny the motions to dismiss be denied.

## I.   BACKGROUND

Plaintiffs Jeffrey L. Bailey and Marlon E. Carter filed suit on April 12, 2019. They amended their complaint on June 11, 2019 (ECF No. 5) and October 4, 2019. (ECF No. 113). Each Defendant has moved to dismiss the second amended complaint. (ECF Nos. 114 and 122). Plaintiffs have also filed motions to "deny" each motion to dismiss. (ECF Nos. 129 and 136). The Court has construed Plaintiffs' motions as responses to the motions to dismiss.

Plaintiffs, who are African American, allege they are members of Teamsters Local 120 ("Local 120") and employees of First Transit, Inc. ("First Transit") an entity that provides services for the Metropolitan Council. (ECF No. 113, p. 7). From 2015 to 2017, Plaintiffs "engaged in Protected Activity and conducted investigations on safety violation[s] & safety terminations." (*Id.*). They also conducted investigations related to the misappropriation of funds and breach of contracts. (*Id.*). Plaintiffs generally allege that when Defendants learned that Plaintiffs' investigations and whistleblowing efforts were "detrimental to their operations, all Defendants . . . unlawfully interfered with Plaintiffs['] good faith Whistleblowing act, breached contracts, used false statements and breached policies & procedures to retaliate, discriminate, and wrongfully terminate them." (*Id.*, p. 12).

In 2016, Plaintiffs informed the Metropolitan Council that it was liable for certain safety violations of First Transit. (*Id.*, p. 8). Plaintiffs allege that the Metropolitan Council responded by breaching a contract between itself and First Transit, breaching Federal Transit Administration guidelines, and denying Plaintiffs access to a complaint procedure. (*Id.*). Plaintiffs also assisted three African American union employees with their Termination Grievance Investigations. Plaintiffs allege that, through these investigations, they discovered that First Transit and Local 120 were breaching the terms of a collective bargaining agreement. (*Id.*, p. 9).

Plaintiffs also engaged in a series of investigations related to Retro Pay. (*Id.*, pp. 8-9). They allege that when First Transit employees Tim Ogren, Dean Vinge, and Patricia Vold discovered that Plaintiffs were about to participate in those investigations, those Defendants retaliated against Plaintiffs by violating their *Weingarten* rights and by "breaching 'Defendant' First Transit's payroll and harassment policy." (*Id.*, p. 9). Plaintiffs further allege that Ogren reduced Plaintiffs' shifts and violated their rights under a collective bargaining agreement. (*Id.*). Plaintiffs also indicate that Local 120 and First Transit violated Plaintiffs' rights under the collective bargaining agreement by scheduling a grievance meeting without a grievance being filed. (*Id.*).

On September 16, 2016, Bailey submitted a verbal complaint of harassment, discrimination, and retaliation against First Transit to Kim Mingos. (*Id.*). Carter submitted a similar complaint to Tom Graves a few days later. (*Id.*, p. 10). Plaintiffs allege that First Transit retaliated by "informing" Ogren and Don Johnson "of the complaint before September 19, 2016." (*Id.*, pp. 9-10).

First Transit, through Ogren and Johnson, attempted to solicit statements from Plaintiffs without union representation. (*Id.*, p. 10). When Plaintiffs refused to provide statements, they were subsequently suspended and placed on unpaid administrative leave. (*Id.*). Plaintiffs then filed a grievance against First Transit. (*Id.*).

Plaintiffs allege that, following the filing for their grievance, they were discriminated against in several ways. First, they allege that First Transit, Local 120, and Ogren reduced their hours and pay and allowed Ogren to conduct a biased investigation against them. (*Id.*). Second, they allege that First Transit, Local 120, Ogren, and Troy Gustafson "retaliated, discriminated, and breached the (CBA) procedure" at Plaintiffs' Step 1 and 2 Termination Grievance Investigation "by denying plaintiffs of the same procedure as other Union Members." (*Id.*, p. 10-11). Third, they allege that First Transit, Local 120, and Gustafson discriminated against them and breached the collective bargaining agreement procedure at their Step 3 Termination Grievance Investigation by allowing an unauthorized third party to reduce Plaintiffs' pay and hours and conduct a biased investigation. (*Id.*). Fourth, they allege that First Transit, Don Johnson, Local 120, and Gustafson retaliated and discriminated against them by reducing Plaintiffs' hours and pay and allowing Johnson to conduct a biased panel hearing investigation against Plaintiffs. (*Id.*). Fifth, they allege that First Transit, Local 120, Ogren, Vinge, Vold, and Gustafson retaliated and discriminated against them by reducing their pay and hours; by submitting false statements and withholding evidence during arbitration proceedings; and by depriving them of the same procedures as other union members. (*Id.*).

Plaintiffs also generally allege that First Transit, Local 120, Ogren, Gustafson, and Johnson refused to investigate their complaints and that those Defendants, along with Vold and Vinge, also retaliated and discriminated against Plaintiffs for engaging in protective activity because of their race. (*Id.*, p. 12). Plaintiffs allege that Defendants did not take similar action against "White Union Members who engaged in Protected Activity." (*Id.*).

Before Plaintiffs filed this complaint, they sought relief through several other avenues. First, Plaintiffs filed a grievance through their union, which was denied on September 15, 2017. (ECF No. 117-1, pp. 6-19). Second, Plaintiffs filed an unfair labor practice charge against First Transit and Local 120. (ECF No. 117-1, pp. 21, 23). Third, Plaintiffs filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 117-1, pp. 40, 42). The EEOC issued right-to-sue letters to Plaintiffs on April 19, 2018. (*Id.*). Finally, Plaintiffs filed charges with the Occupational Safety and Health Administration ("OSHA"). (ECF No. 117-1, pp. 48, 50).

Plaintiffs now contend that Defendants have violated both federal and state law. (ECF No. 113, p. 5). They seek monetary and injunctive relief. The Court took the matter under advisement following the competition of briefing on November 26, 2019.

## II. MOTION TO DISMISS

Defendants have moved for dismissal under Fed. R. Civ. P. 12(b)(6) and 12(b)(1). When determining a Rule 12(b)(1) motion, courts "must distinguish between a 'facial attack' and a 'factual attack' on jurisdiction." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). "In a facial attack, 'the court restricts itself to the face of the pleadings, and the

5

non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" *Id.* "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.*

In deciding a Rule 12(b)(6) motion, a court accepts as true all well-pleaded factual allegations and then determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). In doing so, the court must draw reasonable inferences in the plaintiff's favor. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sletten & Brettin Orthodontics v. Cont'l Cas. Co.*, 782 F.3d 931, 934 (8th Cir. 2015) (citation and internal quotations omitted). Facial plausibility of a claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Although a sufficient complaint need not be detailed, it must contain "[f]actual allegations . . . enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). Complaints are insufficient if they contain "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In assessing a complaint by a *pro se* plaintiff, the court applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (quotation and citation omitted). "If the essence of an allegation is

6

discernible," then the court, in applying a liberal construction to *pro se* complaints, "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Despite the liberal construal of such complaints, the *pro se* plaintiff "still must allege sufficient facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d 912, 914 (8th Cir. 2004)). Thus, *pro se* litigants "must set a claim forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law." *Id.* (quoting *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981)). In this case, Plaintiffs have alleged several claims under both federal and state law. The Court will address each in turn.

### A. National Transit Systems Security Act Claim

Plaintiffs' first claim of relief is entitled "OSHA DOL NTSSA Whistleblowing Act 6 U.S.C. § 1142." (ECF No. 113, p. 5). The Court construes this claim as seeking relief under the National Transit Systems Security Act. ("NTSSA"). The NTSSA prohibits public transportation agencies and their officers, employees, contractors, and subcontractors from taking certain adverse acts against an employee who has provided, or is about to provide, information regarding violations of federal laws, rules, and regulations related to public transportation safety, security, or fraud. 6 U.S.C. § 1142(a)(1). It also prohibits adverse actions against employees who report hazardous safety or security conditions or refuse to work when confronted with such conditions. *Id.* § 1142(b)(1).

Plaintiffs' complaint does not contain sufficient "factual content" to establish a plausible claim for relief. *See Iqbal*, 556 U.S. at 678. Though Plaintiffs allege they were investigating "safety violation[s]" and the "misappropriation of funds" (ECF No. 113, p. 8), they do not identify any specific rules or laws that they believe were violated by Defendants' conduct. Nor do they describe with any particularity the hazardous safety or security conditions to which they were exposed or the alleged fraudulent activity in which Defendants engaged. Plaintiffs also fail to plead, with regard to Local 120 and Gustafson, facts showing that either of those defendants is a public transportation agency, a contractor or subcontractor of the agency, or an officer or employee of the agency. Without this information, the Court cannot assess whether Plaintiffs have pled facts that would establish they were engaging in activity protected by the NTSSA, or whether the adverse action they suffered was directly connected to the protected activity. The Court therefore recommends the NTSSA claim be dismissed without prejudice.[1]

### B. Title VI Claim

Plaintiffs next seek relief under Title VI of the Civil Rights Act. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Plaintiffs also cite to 28 C.F.R. § 42.107(e), a subpart of the Code of

---

[1] Certain Defendants ask that the Court dismiss this claim for lack of subject matter jurisdiction, asserting that Plaintiffs acted in bad faith in utilizing the kick-out provision of the NTSSA. *See* 6 U.S.C. § 1142(c)(7). Though the Court is sympathetic to these concerns, the Court cannot determine conclusively from the record that but for Plaintiffs' conduct, the matter would have been resolved in the 210-day period provided for by statute.

Federal Regulations enacted for the purpose of implementing Title VI. *See* 28 C.F.R. § 42.101. Subpart 42.107(e) states that "[n]o recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this subpart, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subpart." Title VI and its accompanying regulations provide a cause of action against "a program receiving federal funding based on the program's *employment* practices" only "where the primary goal of the federal funding is to provide employment." *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 91 (D.D.C. 2010) (alternation in original); *see also* 42 U.S.C. § 2000d-3.

In this case, Plaintiffs' Title VI claim fails because though they allege that the Metropolitan Council is a government agency that "receives federal assistance" or "federal funds," they do not identify the purpose for which the Metropolitan Council receives federal funds. (ECF No. 113, pp. 7-8). Nor do they allege facts showing that the primary purpose of any federal funds "is to provide employment or that the intended beneficiaries of those funds are employees like [Plaintiffs]." *Middlebrooks*, 722 F. Supp. 2d at 91-92 (footnote omitted). Plaintiffs therefore fail to plead a viable cause of action under Title VI and its accompanying regulations.

It could be argued that the Metropolitan Council's only way to achieve the primary purposes for which it receives federal funds is to provide employment to people like Plaintiffs. But a Title VI claim cannot be sustained by allegations that show merely that the program objectives could be obtained only by hiring and training individuals. *Temengil v.*

9

*Trust Territory of Pac. Islands*, 881 F.2d 647, 653 (9th Cir. 1989); *see also Middlebrooks*, 722 F. Supp. 2d at 93 (declining to recognize a Title VI claim where "the hiring of employees to implement program objectives" was only incidental to the purpose for which the entity receives federal funds). Thus, even if the Court were to assume that the Metropolitan Council hired Plaintiffs in order for it to achieve the purpose for which it receives federal funds, Plaintiffs would still fail to allege a valid Title VI claim. The Court therefore recommends Plaintiff's claims under Title VI and 28 C.F.R. § 42.107(e) be dismissed without prejudice.[2]

### C. Title VII Claim

Plaintiffs also seek relief under Title VII of the Civil Rights Act. Title VII prohibits employers or labor organizations from discriminating "against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Title VII also prohibits employers or labor organizations from discharging or otherwise discriminating against any individual on the basis of that person's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Any person who wishes to bring a civil action under Title VII must first file a charge alleging unlawful discrimination with the EEOC. 42 U.S.C. § 2000e-5(b), (c) & (f). Once

---

[2] Furthermore, Plaintiffs fail to allege at all that Local 120 and Gustafson are part of a state or local government or receive financial assistance from the federal government. Their Title VI claim fails against those two Defendants for this reason as well.

the EEOC concludes its investigation and notifies the complainant of his or her right to sue, the complainant has 90 days to file a lawsuit against the employer. 42 U.S.C. § 2000e-5(f)(1). A lawsuit filed more than 90 days after the plaintiff receives notice of his or her right to sue under Title VII is untimely and must be dismissed. *Maegdlin v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. 949,* 309 F.3d 1051, 1054 (8th Cir. 2002).

Plaintiffs filed their lawsuit well outside the ninety-day statute of limitations. They received notice from the EEOC of their right to sue on April 19, 2018. They did not file this action until April 12, 2019 and did not raise their Title VII claims until the filing of their motion to amend in September 2019. Plaintiffs' Title VII claims are untimely.

In their papers responding to the motions to dismiss, Plaintiffs contend that the statute of limitations should be tolled, alleging that Defendants concealed information from them and misled them. The doctrine of fraudulent concealment, which tolls the running of a statute of limitations, has long been "read into every federal statute of limitations." *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946). For it to apply to a federal claim, Plaintiffs must show that: (1) Defendants engaged in a course of conduct to conceal evidence of their alleged wrongdoing and (2) Plaintiffs failed to discover the facts giving rise to their claims despite their exercise of due diligence. *See Schaefer v. Arkansas Medical Soc.,* 853 F.2d 1487, 1491-92 (8th Cir. 1988).

The fraudulent concealment doctrine does not apply here for several reasons. First, to benefit from a doctrine that tolls the relevant statute of limitations, the plaintiff must allege facts in the complaint that show he or she could not act in a timely manner. *Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 527 (S.D.N.Y. 2015). A plaintiff cannot raise

11

these allegations for the first time in a memorandum or motion opposing a motion to dismiss. *Id*. And in their complaint, Plaintiffs provide no information that would allow the Court to determine whether it is appropriate for her to invoke the equitable tolling doctrine. Thus, as pled, Plaintiffs fail to demonstrate the statute of limitations should be tolled.

Second, though the fraudulent concealment doctrine might explain Plaintiffs' delay in initially taking action by filing a charge of discrimination with the EEOC, Plaintiffs were undoubtedly aware of their alleged injuries at the time they sought relief from the EEOC. They do not explain in their motion, complaint, or elsewhere why they waited so long to file suit after receiving their right-to-sue letter. As a result, the Court cannot conclude that Plaintiffs acted diligently in bring their Title VII claims.

Third, because the fraudulent concealment doctrine necessarily involves allegations of fraud, it must be pled with particularity under Federal Rule of Civil Procedure 9(b). *Great Plains Tr. Co. v. Union Pac. R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007). "This means the who, what, when, where, and how: the first paragraph of any newspaper story." *Id*. (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990)). Even accounting for assertions contained in their memorandum of law, Plaintiffs allege only that Defendants

> actively concealed and misled Plaintiffs[] regarding the existence of the adverse action and the retaliatory grounds for the adverse action in such a way as to prevent Plaintiffs[] from knowing or discovering the requisite elements of a prima facie case, such as presenting the Plaintiffs[] with forged documents purporting to negate the basis for supposing that the adverse action was related to protective activity.

(ECF No. 136, p. 4). This statement is far too conclusory to satisfy the requirements of Rule 9(b). Plaintiffs do not identify which Defendants took the adverse action; what

documents Defendants withheld; when Plaintiffs learned of those documents; or how those documents impacted this case. Plaintiffs also do not explain the withholding of this information prevented them from discovering their claims in the statutory period. Accordingly, the Court recommends their Title VII claims be dismissed with prejudice.

### D. False Claims Act Claim

Plaintiffs next allege a claim under the False Claims Act. ("FCA"). As relevant here, the FCA prohibits a person from "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B). Because the FCA "attaches liability, not to the underlying fraudulent activity, but to the claim for payment," *In re Baycol Prods. Litig.*, 732 F.3d 869, 875 (8th Cir. 2013) (citation omitted), Plaintiffs must offer "sufficient allegations of materially false claims" in order to state a claim on which relief can be granted. *Olson v. Fairview Health Servs. of Minnesota*, 831 F.3d 1063, 1071 (8th Cir. 2016). In addition, as the Court explained above regarding the fraudulent concealment doctrine, Plaintiffs must satisfy the particularity requirements of Rule 9(b) and plead the "who, what, where, when, and how of the alleged fraud" in order to bring a plausible FCA claim. *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (citation omitted).

Plaintiffs have failed to allege facts that establish a viable FCA claim. They provide no information about the alleged false claim. At most, Plaintiffs offer only conclusory references to the misappropriation of funds, without identifying the source of the funds or what the purpose of the funds was, or who was in charge of managing the funds. Plaintiffs do not allege who made the false claim or identify the federal agency or program to whom

13

the person made that claim. They do not explain what false records or statements that person used to make alleged false claims. In short, Plaintiffs' complaint falls well short of the particularity requirements of Rule 9(b). The Court recommends the FCA claim be dismissed without prejudice.

### E. Section 1981 Claim

Plaintiffs' final federal claim is brought pursuant to 42 U.S.C. § 1981. Section 1981 provides that all "persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a). Plaintiffs appear to allege that Defendants violated this statute by discriminating and retaliating against them on the basis of race. (ECF No. 136, p. 5).

To establish a prima facie case for race discrimination under Section 1981, Plaintiffs must plead facts showing (1) they are members of a protected class; (2) they met their employer's legitimate expectations; (3) they suffered an adverse employment action; and (4) the circumstances that give rise to an inference of discrimination. *Young v. Builders Steel Co.*, 754 F.3d 573, 577 (8th Cir. 2014). Plaintiffs have failed to do so here. Though they allege they are members of a protected class, they provide no facts to show their employer's legitimate expectations or how Plaintiffs satisfied those allegations. Plaintiffs also do not allege any circumstances that would give rise to an inference of discrimination, other than asserting that Defendants did not take the same action against "White Union Members who engaged in Protected Activity." (ECF No. 113, p. 12). This statement is nothing more than a "naked assertion[] devoid of further factual enhancement." *Iqbal*, 556

U.S. at 678. It is therefore insufficient to constitute a plausible claim for relief under Rule 12.

The Court reaches the same conclusion regarding Plaintiffs' claims regarding alleged retaliation under Section 1981. Courts apply "the same analysis" to Section 1981 retaliation claims that they apply to retaliation claims under Title VII of the Civil Rights Act. *Takele v. Mayo Clinic,* 576 F.3d 834, 838 (8th Cir. 2009). Thus, to plead a viable retaliation claim under Section 1981, Plaintiffs must show that their employer took an adverse employment action against them for engaging in statutorily protected expression. *See Kipp v. Missouri Highway & Transp. Comm'n*, 280 F.3d 893, 896 (8th Cir. 2002) (considering claim under Title VII). A plaintiff typically satisfies this standard by alleging facts, if accepted as true, that would show direct evidence related to the motivation of the decisionmaker. *Walker v. Glickman,* 241 F.3d 884, 888 (7th Cir. 2001). A plaintiff may also satisfy this standard by alleging facts that would allow for the inference of retaliatory motive. *Kipp*, 280 F.3d at 896.

Plaintiffs' claim fails under either standard. To begin, Plaintiffs have not identified with any specificity the type of protected activity in which they engaged. Furthermore, Plaintiffs allege only that Defendants generally retaliated against them because they engaged in protected activity. Plaintiffs have not alleged any facts that, if taken as true, would constitute direct evidence of retaliatory motive. They also fail to plead facts that would allow the Court to draw the inference that any adverse employment action was the result of their engaging in statutorily protected activity. The Court therefore recommends their Section 1981 claims be dismissed without prejudice.

### F. State Law Claims

Finally, Plaintiffs have alleged two claims under Minnesota law. Their first claim is brought pursuant to Minnesota Statutes Section 541.05, which is a statute that governs the statute of limitations for certain causes of action. Plaintiffs have not explained how this statute provides them an independent claim for relief. The Court therefore recommends that, to the extent Plaintiffs intended to file suit under this section, their claim be dismissed with prejudice.

As to the remaining claim brought under Minnesota Statutes Section 181.932, the Court's original jurisdiction over this matter was the result of the federal questions raised in the operative complaint. The Court therefore had supplemental jurisdiction over Plaintiffs' remaining state law claim pursuant to 28 U.S.C. § 1367(a). Because the Court has now recommended dismissal of the claims arising under its original jurisdiction, the Court must now consider whether to recommend exercising supplemental jurisdiction over that claim. 28 U.S.C. § 1367(c). In deciding whether to exercise supplemental jurisdiction after dismissing the only claims arising under its original jurisdiction, the Court must consider "the stage of the litigation; the difficulty of the state claim; the amount of judicial time and energy necessary for the claim's resolution; and the availability of a state forum." *Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp.,* 5 F.Supp.2d 694, 711 (D. Minn. 1998) (citing *Marshall v. Green Giant Co.,* 942 F.2d 539, 549 (8th Cir. 1991)). The "normal practice" is to dismiss supplemental state law claims when the federal claims are dismissed prior to trial. *Kapaun v. Dziedzic*, 674 F.2d 737, 739 (8th Cir. 1982).

In this case, litigation is also not far along. The pre-trial scheduling conference has not been held and the parties have not filed their Rule 26 report. The Court recommends that supplemental jurisdiction not be exercised over the remaining Minnesota state law claim.

### III. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 114) and Defendants' Teamsters Local 120 and Troy D. Gustafson Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 122) be **GRANTED** as follows:

    a. The claims under Title VII of the Civil Rights and Minnesota Statutes Section 541.05 be dismissed with prejudice; and

    b. All other claims be dismissed without prejudice.

2. Plaintiffs' motions to deny the motions to dismiss (ECF Nos. 129 and 136) be **DENIED**.

Date: February 19, 2020              *s/ Tony N. Leung*
                                     Tony N. Leung
                                     United States Magistrate Judge
                                     District of Minnesota

                                     *Bailey, et al. v. Metropolitan Council, et al.*
                                     No. 19-cv-1024 (DWF/TNL)

17

## **NOTICE**

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).